IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                               No. 06cv820 MCA/RHS

$24,700 IN UNITED STATES CURRENCY,

       Defendant,

SAMMY QUINTANA, AGNES
DOLORES QUINTANA, and CONNIE
GARCIA,

       Claimants.


## MEMORANDUM OPINION AND ORDER


**THIS MATTER** comes before the Court on *Claimants' Motion for Summary Judgment and Memorandum in Support* [Doc. 36], filed October 23, 2007; the United States's *Motion for Summary Judgment and Memorandum Brief in Support* [Doc. 38], filed November 19, 2007; and the United States's *Motion to Strike Answer and for Default Judgment for Failure to File Verified Claim* [Doc. 40], also filed November 19, 2007. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies Claimants' motion for summary judgment; denies as moot the United States's motion to strike; and grants the United States's motion for summary judgment.

## I. BACKGROUND

On February 4, 2006, officers with the New Mexico State Police and the Tucumcari (N.M.) Police Department executed a search warrant at a home located at 619 S. 7th Street in Tucumcari and owned by Claimants Sammy Quintana and Agnes Dolores Quintana (his mother). [Doc. 36; Exh. 2, "Uniform Incident Report" at 2]. In the kitchen, the officers discovered two concealment cans, one of which contained a whitish material. The other can contained what was suspected to be heroin. [Id.; "Statement of Probable Cause"]. In the living room officers found a 30-channel police scanner, and in a bedroom they found, among other things, $24,000 in a Royal Crown box in the top of a closet; $700 in a pair of pants; scales with what appeared to be heroin residue; a purse containing suspected marijuana rolling papers; a bong; baggies; 19 syringes; a mason jar containing what appeared to be marijuana; and a partial marijuana cigarette. [Id.]. The suspected narcotics field tested positive for heroin, marijuana, and methamphetamine. [Id., "Uniform Incident Report" at 3].

On February 5, 2006, Sammy Quintana, whose criminal history includes two drug-related (cocaine) felony convictions,[1] was charged with possession of marijuana over one ounce but less than eight ounces (Count 1) and possession of drug paraphernalia (Count 2). [Doc. 36; Exh. 2, "Criminal Complaint"]. No claim for forfeiture of the $24,700 was ever made in state court. [Doc. 36 at 3]. Instead, the currency was "adopted" by the Drug Enforcement Agency (DEA) for the purpose of allowing the DEA to pursue an adoptive

---

[1] Although not entirely clear, it appears that the convictions were for possession with intent to distribute cocaine. [See Doc. 38; Exh. 3, Oct. 9, 2007 deposition of Samuel Quintana at 6-11].

seizure.[2]  [Doc. 38; Exh. 1, "Seizure Form"].  To that end, on September 5, 2006, the United States filed in this Court a *Verified Complaint for Forfeiture in Rem*, arguing that the currency was subject to arrest and forfeiture under 21 U.S.C. § 881(a)(6) "because it was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act."  [Doc. 1 at 3].

Claimants now move for summary judgment, arguing that this Court lacks jurisdiction over the res, which was seized by state law enforcement agents pursuant to a search warrant issued under state law by a state district court.   [Doc. 36 at 1]. According to Claimants,

---

[2]  Cavaliere v. Town of North Beach explains how an adoptive seizure may come about:

> Although not expressly authorized in the Federal statutes or regulations, the U.S. Attorney General, as part of a cooperative effort between the Federal, State, and local governments in combatting the illicit distribution and use of controlled substances, has permitted DEA to "adopt" seizures made by local officials and to utilize the Federal forfeiture procedure with respect to such property.

Cavaliere, , 646 A.2d 1058, 1060 (Md.App. 1994).  Johnson v. Johnson explains the process:

> Through informal arrangements, local police departments agree to notify the DEA when they seize property which may be subject to forfeiture pursuant to federal narcotics laws. Upon a DEA request, the local police department will transfer the property to the DEA, which will treat the property as if it had been seized by federal authorities. That is, the DEA will "adopt" the seizure. The DEA will then institute federal forfeiture proceedings against the property. Once the forfeiture is complete, the DEA is authorized to "split the pot" with the cooperating local police department.

Johnson, , 849 P.2d 1361, 1363.

3

"New Mexico courts have exclusive jurisdiction over cash its state officers seize." [Id. at 2].
Claimants rely heavily on the case of Albin v. Bakas, 160 P.3d 923 (N.M.App. 2007) and
Albin's construction and interpretation of the New Mexico Forfeiture Act, 1978 N.M. STAT.
ANN. §§ 31-27-1 et seq. [See generally Doc. 36.  It is Claimants' position that because "[t]he
United States of America is not in legal possession of [C]laimants' cash[, t]he United States
of America's possession of [C]laimants' cash and attempt to forfeit [C]laimants' cash
deprives [C]laimants of their Fifth and Fourteenth Amendment Due Process Rights." [Id. at
2].

        The United States responds that exclusive jurisdiction began and remains in this Court
because this Court was the first and only court to obtain subject matter jurisdiction and in
rem jurisdiction over the property. [Doc. 37 at 3].  The United States also has moved for
summary judgment on the ground that it has shown by a preponderance of the evidence that
the defendant property is subject to forfeiture. [See generally Doc. 38].  Claimants have
submitted a *Stipulation of Counsel* in which they agree that, should their jurisdictional
argument fail, the United States would be able to prove that the $24,700 is forfeitable under
federal law.[3, 4, 5] [Id.; Exh. 4, "Stipulation of Counsel" at 4-5].  Lastly, the United States also

_____

        [3] Claimants do not, however, stipulate that the money at issue constitutes proceeds of
illegal activity. [Doc. 38; Exh. 4, "Stipulation of Counsel" at 4-5].

        [4] On January 7, 2008, Claimants filed *Claimant's [sic] Response to Plaintiff's Motion
for Summary Judgment* [Doc. 43].  Plaintiff's summary-judgment motion, however, was filed on
October 23, 2007. [See Doc. 36].  The Court recognizes that Claimants' response merely repeats
their jurisdictional position; nevertheless, the Court reminds counsel for Claimants that the local
rules of this district provide that "[a] response must be served and filed within fourteen (14) days
after service of the motion."  D.N.M.LR-Civ. 7.6(a).  *Claimants' Reply in Support of Motion for*

4

has moved to strike Claimants' *Answer* and for default judgment for failure to file a verified claim. [See generally Doc. 40].

## II. ANALYSIS

### A. Fed.R.Civ.P. 56(c)

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In the instant case, the United States also has moved for summary judgment. Where the movant is also the party bearing the burden of persuasion with regard to the claim on

---

*Summary Judgment* [Doc. 42; filed January 7, 2008] also was filed out of time inasmuch as the *Response* to which it relates was filed November 16, 2007. See id.

[5] It is noted that, in addition to counsel's *Stipulation* that the money is subject to forfeiture, Exhibit 4 also includes sworn testimony from Claimants Samuel Quintana, Dolores Quintana, Connie Garcia, and Richard Quintana that confirms the *Stipulation*.

which a summary judgment is sought, the movant must show that the record as a whole satisfies each essential element of its case and negates any affirmative defenses in such a way that no rational trier of fact could find for the non-moving party. See 19 Solid Waste Dep't Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir. 1998); Newell v. Oxford Mgmt., Inc., 912 F.2d 793, 795 (5th Cir. 1990); United Missouri Bank of Kansas City, N.A. v. Gagel, 815 F. Supp. 387, 391 (D. Kan. 1993).  The admissions in a party's answer to a complaint are binding for purposes of determining whether the movant has made such a showing.  See Missouri Housing Dev. Comm'n v. Brice, 919 F.2d 1306, 1314-15 (8th Cir. 1990).  Similarly, the Court may consider any undisputed material facts set forth in the motion papers which are deemed admitted by operation of D.N.M. LR-Civ.56.1.  See LaMure v. Mut. Life Ins. Co. of N.Y., 106 F.3d 413, 1997 WL 10961, at *1 (10th Cir. 1997) (unpublished disposition); Smith v. E.N.M. Med. Ctr., 72 F.3d 138, 1995 WL 749712, at *4 (10th Cir. 1995) (unpublished disposition); Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-24 (7th Cir.1994) (approving use of local rule similar to D.N.M. LR-Civ. 56.1(b)).

Apart from these limitations, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

**B.** ***Claimants' Motion for Summary Judgment and Memorandum in Support*** **[Doc. 36]**

Section 1355 of Title 28 of the United States Code provides, in pertinent part, that "[t]he [federal] district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any . . . forfeiture. . . . " 28 U.S.C. § 1355(a).   Nonetheless, federal courts recognize the "first in time" rule, which holds that "the court first asserting jurisdiction over the property has the power to decide the case without interference from other courts, even though those courts may have had jurisdiction over the property had they exercised that jurisdiction first." United States v. One Parcel Property Located at Lot 85, County Ridge, 100 F.3d 740, 742 (10th Cir. 1996) (*citing* Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader, 294 U.S. 189, 195 (1935)); see also United States v. Winston-Salem/Forsyth County Bd. of Educ., 902 F.2d 267, 271 (4th Cir. 1990) ("[F]or the state court to have exclusive jurisdiction over [seized] cash under Penn General, the state forfeiture proceeding must have been initiated prior to the federal forfeiture proceeding and both the state and federal forfeiture proceedings must have been in rem.").  Importantly, jurisdiction remains "at rest until called into action by some suitor. . . ." Rutherford v. Buhler, 555 P.2d 715, 718 (N.M.App. 1976).

New Mexico's Forfeiture Act directs that "[s]eized currency alleged to be subject to forfeiture *shall* be deposited with the clerk of the district court in an interest-bearing account."  1978 N.M. Stat. Ann. §§ 31-27-8(A) (emphasis added).  A complaint of

forfeiture[6] need not be filed in order for the Forfeiture Act to become operative; instead,

> [t]he effect of the legislative directive to deposit currency alleged to be subject to forfeiture into an account subject to the direct jurisdiction and supervision of the district court is that the district court acquires jurisdiction over the currency and maintains it to the exclusion of any other court, be it a state court or federal court.

Albin, 160 P.3d at 928.

Albin, a New Mexico Tort Claims action brought against, among others, officers with the New Mexico State Police, arose after defendants turned over to the United States Marshal Service currency[7] that they had seized during a traffic stop. Contrary to the safekeeping dictates of the Forfeiture Act, defendants did not deposit the seized cash with the clerk of the state district court, reasoning that "they were not *required* to initiate forfeiture proceedings under state law because there is no language in the statutes that renders the Forfeiture Act the *exclusive* law under which a forfeiture action may be commenced." Albin, 160 P.3d at 929 (emphasis in original). The court of appeals rejected this argument on the basis of the "plain, ambiguous" mandate of § 31-27-8(A). Id.

The court of appeals also rejected a statutory construction that would have rendered the Forfeiture Act inapplicable to federal forfeiture proceedings given the provision that the Act "applies to . . . seizures, forfeitures and dispositions of property subject to forfeiture

---

⁶ See 1978 N.M. STAT. ANN. § 31-27-5.

⁷ The State Police turned over to the DEA a cashier's check in the amount of the money seized ($23,100), which allowed the DEA to pursue an adoptive seizure. Albin, 160 P.3d at 926, 929. The United States then filed a forfeiture complaint in this Court and, after a bench trial, the money was ordered forfeited. [See Docs. 1, 67, 68 in D.N.M. 03cv538 JAP/RHS].

pursuant to other laws; but only to the extent that the procedures in the Forfeiture Act for seizing, forfeiting or disposing of property are consistent with any procedures specified in those laws." 1978 N.M. STAT. ANN. § 31-27-2(B)(2). For reasons spelled out thoroughly at pages 930 through 932 of its opinion, the court rejected defendants' contention that § 31-27-2(B)(2)'s reference to "other laws" includes federal forfeiture proceedings, and because federal forfeiture proceedings are not entirely consistent with the Forfeiture Act, the latter is therefore inapplicable to the former. Albin, 160 P.3d at 930-932.

Claimants rely on Albin when they assert that (1) New Mexico courts have exclusive jurisdiction over cash its state officers seize; (2) the only court with jurisdiction over the res in this case is a state district court; and (3) this Court has no jurisdiction over or interest in the res. [Doc. 36 at 4, 5]. But Claimants' contentions ignore the "first in time" rule (which Albin reconfirmed) as well as Albin's pronouncement that "[*i*]*f* the cash had been deposited with the clerk of the district court, it *would have* been under the exclusive jurisdiction of the district court. . . ." Albin, 160 P.3d at 928 (emphasis added). Albin did not hold that exclusive state court jurisdiction over the res is created simply by virtue of a state seizure.[8]

---

[8] Nor was the court of appeals presented with that question. Instead,

> [t]he issue presented [was] whether state police officers who seize cash under the authority of [New Mexico's] Controlled Substances Act . . . are required to comply with the requirements of the Forfeiture Act . . . or whether they may instead transfer the cash to the federal government to bring a forfeiture action under federal law, then receive from the federal government a portion of the proceeds.

Albin, 160 P.2d at 925.

Rather, the holding in Albin was expressly narrow and limited to the following: "when property is seized by state police officers for forfeiture, compliance with the Forfeiture Act is required even if the state intends to transfer the property to the federal government to pursue a federal forfeiture action pursuant to an 'adoptive seizure.'" Id. at 932.  Having determined that defendants had violated the Forfeiture Act, the court of appeals remanded the matter for a determination whether, among other things, defendants had converted the res. Id.

In other words, it does not follow that this Court lacks jurisdiction over the res because state law enforcement officers may have acted in violation of the Forfeiture Act,[9] and the Court does not read Albin as compelling such a result.  Nor is the Court persuaded that a violation of the Forfeiture Act necessarily amounts to a violation of Claimants' due process rights on the part of the United States.  [See Doc. 36 at 7 ("The joint action of the state police and the federal government deprived [C]laimants not only of their property, but also of their rights under the due process clauses of the Fifth and Fourteenth Amendment[s].")].

In Madewell v. Downs, 68 F.3d 1030 (8th Cir. 1995), plaintiff/claimant brought suit against DEA agents pursuant to 43 U.S.C. § 1983, arguing, inter alia, that his due process rights were violated  when the DEA adopted a seizure and became the transferee of $9,400 in currency that had been confiscated by Missouri State Highway Patrol (MSHP) officers.

---

[9]  Given that claimants have presented a purely jurisdictional question, this Court makes no determination as to whether state law enforcement officers violated the Forfeiture Act.

Madewell, 68 F.3d at 1038.  Although no state forfeiture proceeding had been commenced

as of the time of the adoption and transfer, plaintiff/claimant's motion for the return of his

property was pending in state court.  Id. at 1034, 1043.  Affirming the district court's entry

of summary judgment for defendants, the Eighth Circuit began with the general proposition

that "[a] federal agency may adopt the seizure of property seized by another agency as

related to illegal drug use or trafficking."  Id. at 1037.  In fact, as early as 1926,

> [i]t [was] settled that, where property declared by a federal
> statute to be forfeited, because used in violation of federal law,
> is seized by one having no authority to do so, the United States
> may adopt the seizure with the same effect as if it had originally
> been made by one duly authorized.

United States v. One Ford Coupe Auto., 272 U.S. 321, 325 (1926).  From this notion that the

United States may adopt a constitutionally deficient seizure or one that the seizing party had

no authority to effect, the Eighth Circuit reasoned that the United States also "'may adopt a

seizure where there was no authority to *transfer* the property.'"  Id. at 1038 (*quoting* Winston-

Salem/Forsyth County Bd. of Educ., 902 F.2d at 272 (emphasis original to Madewell).

Consequently, even a constitutional infirmity in the transfer of seized property will not taint

the federal adoption of the seizure.  Madewell, 68 F.3d at 1038.

Mindful of the fact that the adoptive seizure and transfer of the res occurred while

plaintiff/claimant's motion for return of the property was pending in state court, the Eighth

Circuit, in a passage that informs this Court's determination, explained:

> Although this court would not suggest that a late federal
> adoption of a seizure and actual transfer of the property to
> federal control could or should be used to avoid the effects of

11

proper state court proceedings concerning the seized property after its seizure by state or local officials and before federal adoption . . . the doctrine [of adoptive seizure] does suggest that the claimant of such property has no due process complaint about the adoption itself. The claimant's due process rights concern the disposition of the property, including its actual forfeiture, rather than adoption of the seizure by one sovereign after actual seizure by another. To put it another way, the claimant's due process concern is with the forfeiture of the property, not with the identity of the sovereign who ultimately undertakes the forfeiture action.

. . .

[T]he due process concerns raised by a federal forfeiture are entirely separate from the adoption of the seizure of the property by federal agents. Because the DEA could adopt the seizure even if the MSHP was without authority to transfer the property seized . . . and because due process is not concerned with the identity of the sovereign seeking to forfeit the seized property, but with the forfeiture action itself, this court holds that Madewell's due process rights were not violated by the DEA defendants when they adopted the seizure of the $9,400 in U.S. currency.

Madewell, 68 F.3d at 1039. For the reasons set forth in Madewell, this Court concludes that

the DEA's adoption of the seizure and the consequent transfer of the res do not implicate

Claimants' due process rights.[10]

---

[10]   After having concluded that the DEA's adoption of the seized currency did not violate plaintiff/claimant's due process rights, the Madewell court went on to consider whether the MSHP defendants violated his due process rights when they transferred the currency to the DEA, calling that issue "a different question." Madewell, 68 F.3d at 1040. The parallel question here, whether state law enforcement agents violated the Quintana claimants' due process rights, is not before this Court and, as stated *supra* in note 7, the Court makes no determination as to whether state law enforcement officers actually acted in violation of the Forfeiture Act.

**C. The United States's *Motion for Summary Judgment and Memorandum Brief in Support* [Doc. 38]**

The United States has moved for summary judgment forfeiting Claimants' right, title, and interest in the res.  The United States maintains that it has shown by a preponderance of the evidence that the $24,700 is subject to forfeiture, and that Claimants have stipulated to that fact. [Doc. 38 at 1,4].  Without agreeing that the $24,700 represents proceeds of illegal activity, Claimants have agreed that the United States's proof is sufficient to demonstrate that the money is forfeitable under federal law. [Id.; Exh. 4, "Stipulation of Counsel" at 4-5]. Claimants otherwise reassert their jurisdictional argument in response to the United States's summary-judgment motion. [Doc. 43].[11]

A forfeiture proceeding is an *in rem* proceeding brought against the property seized pursuant to the legal fiction that the property itself is guilty of a crime or is proceeds of a crime.  United States v. $149,442.43 in U.S. Currency, 965 F.2d 868, 876 (10th Cir. 1992). Section 881(a)(6) of Title 21 of the United States Code "authorizes forfeiture of all proceeds traceable to a controlled-substance exchange and all monies used or intended to be used to facilitate such an exchange."  United States v. $252,300.00 in U.S. Currency, 484 F.3d 1271, 1272 (10th Cir. 2007); see also 21 U.S.C. § 881(a)(6).  Pursuant to the Civil Asset Forfeiture Reform Act of 2000, the United States bears the burden of demonstrating by a preponderance of the evidence that the property is subject to forfeiture.  18 U.S.C. § 983(c)(1).  The United States may use evidence gathered after the filing of the complaint to establish that the res is

---

[11] See supra n.5.

subject to forfeiture, and where, as here, its theory is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the United States "shall establish that there was a substantial connection between the property and the offense."  18 U.S.C. § 983(c)(2), (3).

This Court must look to the aggregate of facts to determine whether the United States has satisfied its burden of proving that the property is subject to forfeiture.  See $149,442.43 in U.S. Currency, 965 F.2d at 876 n.5.  Once the United States has satisfied its burden, the claimant must then show that he or she did not know of the conduct giving rise to the forfeiture or, upon learning of that conduct, did all that reasonably could be expected under the circumstances to terminate such use of the property. 18 U.S.C. § 983(d)(2)(A)(I), (ii).  If no such showing is made, the United States is entitled to summary judgment.  See $149,442.43 in U.S. Currency, 965 F.2d at 876.

Although quantity of cash alone is not enough to connect it to illegal drug transactions, it is a significant fact and weighs heavily in the Court's consideration.  See United States v. $242,484.00, 389 F.3d 1149, 1161 (11th Cir. 2004).  The same is true for large amounts of *hidden* currency.  See $149,442.43 in U.S. Currency, 965 F.2d at 877.  While the forfeiture cases cited thus far in this *Opinion* have involved sums in the six-figure range, see id.; $242,484.00, 389 F.3d 1149; and $252,300.00 in U.S. Currency, 484 F.3d 1271, at least one court has found as little as $31,750.00 to be subject to forfeiture, especially where, among other things, that sum represented 75% of the claimant's annual earnings and was found—in cash—in the same area of the claimant's house as diazepam and lactose, two

14

common narcotic cutting agents, and other items seized pursuant to a search warrant.  United States v. $21,510 in U.S. Currency, 292 F.Supp.2d 318, 321-322 (D. Puerto Rico 2003); but see United States v. $5000.00 in U.S. Currency, 40 F.3d 846, 850 (6th Cir. 1994) ("Fifteen to twenty thousand dollars is hardly enough cash, *standing alone*, to justify more than a suspicion of illegal activity.") (emphasis added).[12]  Indeed, "the most compelling case[s] for forfeiture are those situations where law enforcement officers discover the property in close proximity to narcotics or drug paraphanelia [sic]."  $21,510 in U.S. Currency, 292 F.Supp.2d at 322.  Additionally, a claimant's prior conviction for possession of narcotics may also be probative of drug-related activity.  See United States v. $99,990.00 in U.S. Currency, 69 Fed.Appx. 757, 763 (6th Cir. 2003) (unpublished).

In this case, the Court concludes that, even in the absence of the *Stipulation of Counsel*, the United States has satisfied its burden of showing that there is a substantial connection between the $24,700 and drug trafficking and, therefore, that the defendant property is forfeitable.  First, at the time the cash was discovered, Sammy Quintana had been unemployed for approximately 20 years. [Doc. 38; Exh. 3; Quintana depo. at 4].  Next, all except for $700 of the cash was hidden in a Royal Crown box that was found in the top of a bedroom closet. [Doc. 36; Exh. 2, "Uniform Incident Report" at 2].  The remaining $700

---

[12]  See also United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars, 403 F.3d 448, 467-470 (7th Cir. 2005) ($30,670 subject to forfeiture where, among other things, dog alert was positive to presence of narcotics on the money and defendant gave "demonstrably false" explanations as to the source of the cash) and United States v. $29,959.00 U.S. Currency, 931 F.2d 549, 553 (9th Cir. 1991) ("Cash amounting to $29,959.00 is an extremely large amount to be kept in the home.").

was discovered in a pair of pants in the same bedroom. [Id.]. Also found in the bedroom were:

> 1. scales with what appeared to be heroin residue;
> 2. a purse containing suspected marijuana rolling papers;
> 3. a bong;
> 4. 19 syringes;
> 5. a mason jar containing what appeared to be marijuana;
> 6. baggies; and
> 7. a partial marijuana cigarette.

[Id. at 2–6]. Two concealment cans were found in the kitchen and a 30-channel police scanner was located in the living room. [Id.; "Statement of Probable Cause"]. Suspected narcotics and narcotic residue field tested positive for heroin, marijuana, and methamphetamine. [Id., "Uniform Incident Report" at 3]. Additionally, through his deposition, Sammy Quintana testified that his criminal history includes two cocaine-related felony convictions. [See Doc. 38; Exh. 3, Quintana depo. at 6-11]. Finally, while not conceding that the $24,700 derived from illegal activity, Claimants have stipulated that the money is forfeitable. [Doc. 38; Exh. 4, "Stipulation of Counsel" at 4-5]. Given the aggregate of the facts, the Court concludes that the United States has demonstrated by a preponderance of the evidence that there is a substantial connection between the $24,700 and drug trafficking and, therefore, that the defendant property is forfeitable.

## III. CONCLUSION

For the foregoing reasons, the Court determines that federal jurisdiction is proper and, further, that the United States has shown by a preponderance of the evidence that the defendant property is subject to forfeiture. In light of these determinations, it is unnecessary

16

for the Court to address the merits of the United States's motion to strike Claimants' *Answer* and enter a default judgment.

IT IS, THEREFORE, ORDERED that *Claimants' Motion for Summary Judgment and Memorandum in Support* [Doc. 36] is **DENIED**;

IT IS FURTHER ORDERED that the United States's *Motion for Summary Judgment and Memorandum Brief in Support* [Doc. 38] is **GRANTED**;

IT IS FURTHER ORDERED that the United States's *Motion to Strike Answer and for Default Judgment for Failure to File Verified Claim* [Doc. 40] is **DENIED AS MOOT**;

IT IS FURTHER ORDERED that the **PRETRIAL CONFERENCE** set for TUESDAY, March 4, 2008, at 9:00 a.m.; the **CALL OF THE CALENDAR** set for THURSDAY, April 3, 2008 at 9:00 a.m.; and the **BENCH TRIAL** set for MONDAY, April 7, 2008, at 9:00 a.m. are hereby **VACATED**.

**SO ORDERED** this 16th day of January, 2008, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge

17